UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY MOTLEY,

        Plaintiff,

v.

         CASE NO. 05-CV-71064-DT
         JUDGE GERALD E. ROSEN
         MAGISTRATE JUDGE PAUL KOMIVES

SECURITAS SECURITY SERVICES USA,
INC., FOREST CITY ENTERPRISES, INC.,
JAMES G. TRACZ, and AL WROBLESKI,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *The Forest City Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    *"Employer" Liability under Title VII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    *Defendant Securitas* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            a. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.    *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            a. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should grant the motion of defendants Forest City, Tracz, and Wrobleski for summary judgment, and should grant the motion of defendant Securitas for summary judgment.

II.   REPORT:

A.    *Background*

Plaintiff Larry Motley commenced this action on April 28, 2005, against defendants Securitas Services USA, Inc. (Securitas), Forest City Enterprises, Inc., James G. Tracz, and Al Wrobleski.  In his *pro se* complaint, plaintiff alleges that defendants discriminated against him on the basis of his race and retaliated against him for complaining about their discriminatory practices, both in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff is an African-American male, employed by defendant Securitas.  Securitas is an independent security firm which contracts with other businesses to provide security services. Plaintiff began his employment with Securitas on August 16, 2002, and soon thereafter was assigned to the account of defendant Forest City, a property management company which manages various commercial properties in the metropolitan Detroit area.  In July 2004, plaintiff was removed from the Forest City account at the request of defendant Al Wrobleski and/or defendant Jim Tracz, both employees of Forest City.  The parties dispute the facts leading to plaintiff's removal from the Forest City account.

Plaintiff alleges that he had an exemplary record prior to his removal from the account. Plaintiff was offered and accepted the position of Assistant (Inspector/Road Supervisor), which paid $11.00 per hour.  In order to qualify for this position, plaintiff was required to complete 10 hours of training at Forest City's Fenimore Court property.  Petitioner admits that he signed out after only four hours of training, but contends that he did so mistakenly because on all the other Forest City sites he had been required to train for only four hours.  According to plaintiff, he was contacted by Derek Humphrey, the account manager, who told him that Wrobleski and Tracz were trying to make a big deal of the issue, and had threatened to remove Melvin Tyson–another Securitas employee who had seen petitioner sign out after only four hours–from the Forest City account if Tyson did not write

an incident report stating that plaintiff had walked off the job.  Humphrey told plaintiff not to worry about the matter, and plaintiff completed his training for the Inspector position.  Plaintiff alleges that the Inspector position paid $11.00 per hour, while defendants contend that the position paid only $10.00 per hour.

In a second incident, plaintiff alleges that defendant Tracz called Securitas Branch Manager Cassandra Dixon on June 10, 2004 (at which time he was working at Forest City's Autumn Ridge property), and asked her to have plaintiff written up for violating company policy based on an argument between Tracz and plaintiff.  Plaintiff denies that any such argument took place.  On that date, petitioner was informed that he was being taken off the Forest City account.

On June 15, 2004, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Forest City.  On July 15, 2004, while at Forest City's Village Center site, defendant Tracz told him that he was not going to pay plaintiff's salary because of the EEOC charge.  Plaintiff filed a subsequent EEOC charge, alleging retaliation, on July 20, 2004.  On July 28, 2004, plaintiff was removed from the Forest City account.  He remains employed by Securitas.

Plaintiff also alleges that he was never promoted to the Inspector position, at $11.00 per hour, although he had completed the necessary training and been told that he would be promoted. Petitioner contends that this position was renamed Scheduler, and was subsequently filled by another Securitas employee.  At one point, plaintiff was promoted to the position of flex officer, but was subsequently removed from this position and demoted to the position of security guard.  Plaintiff also alleges that defendants Tracz and Wrobleski approved the promotion of Frank Cooper, a white security guard, to Derek Humphrey's account manager position, despite the fact that Cooper was

3

less qualified than plaintiff and two other African-American security guards.

For their part, defendants denied that any of their actions were taken for an impermissible discriminatory or retaliatory reason. Further, defendants contend that the Inspector position only paid $10.00 per hour, not $11.00 per hour as plaintiff alleges, and that the position which plaintiff claims he was promised ultimately went unfilled for budgetary reasons. With respect to plaintiff's assignments after his removal from the Forest City account, defendant Securitas notes that plaintiff was initially made a flex officer, earning $10.00 per hour. On March 30, 2005, he was removed as a flex officer and permanently assigned to the Livernois Vehicle account at a rate of $9.25 per hour. This action was taken by Cassandra Dixon based on plaintiff's challenging of her assignments and direction. The Livernois Vehicle account ended in June 2005, and since that time plaintiff as been assigned to the Etkin Equities account at a rate of $8.50 per hour.

Currently before the Court are two motions for summary judgment filed by defendants on November 30, 2005. In their motion, defendants Forest City, Tracz, and Wrobleski (collective "the Forest City defendants") contend that they are not liable under Title VII because they were not plaintiff's employer. Alternatively, they contend that plaintiff has failed to establish a *prima facie* case of either discrimination or retaliation sufficient to withstand summary judgment. In its separate motion, Securitas likewise argues that plaintiff has failed to set forth a *prima facie* case of discrimination or retaliation. On February 14, 2006, plaintiff filed a response to defendant Securitas's motion for summary judgment. Plaintiff has not filed a separate response to the Forest City defendants' motion. Defendant Securitas filed a reply on March 7, 2006, and the Forest City defendants filed a reply on March 8, 2006.

On March 17, 2006, the Court referred both motions to me for a report and recommendation

4

pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, the Court should grant defendants' motions.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

5

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving
> party for a jury to return a verdict for that party. If the [non-movant's] evidence is
> merely colorable, or is not significantly probative, summary judgment may be
> granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party." *Sutherland*, 344 F.3d at 613.

C.     *The Forest City Defendants*

The Forest City defendants principally argue that they are entitled to summary judgment

because they were not plaintiff's employer, and thus they cannot be held liable under Title VII. The

Court should agree.

1.     *"Employer" Liability under Title VII*

Title VII prohibits discrimination on various bases by employers against their employees.

Specifically, the Act provides that "[i]t shall be an unlawful employment practice for an *employer*"

to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a) (emphasis added).

Likewise, the retaliation provision of the Act provides that "[i]t shall be an unlawful employment

practice for an *employer*" to retaliate against an employee for opposing a discriminatory practice of

the employer. 42 U.S.C. § 2000e3(a). The Act defines an "employer" as "a person engaged in an

industry affecting commerce," 42 U.S.C. § 2000e(b), and an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

As the courts have recognized, the Act's definition of "employee" "'is completely circular and explains nothing.'" *Alberty-Velez v. Corporacion de Puerto Rico para la Difusion Publica*, 361 F.3d 1, 6 (1st Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Nevertheless, "it is clear that it does not cover independent contractors." *Id.*; *see also*, *Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 613 (6th Cir. 1987). "Thus, an independent contractor may not maintain a Title VII action against the entity with which she contracts." *Alberty-Velez*, 361 F.3d at 6. In determining whether a person is an employee, a court must look to the economic realities of the relationship between the plaintiff and the defendant. *See Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996). Although a court must look to the totality of the relationship between the parties, the most important factors are the defendant's ability to control job performance and employment opportunities. *See id.*

2.    *Analysis*

Here, the economic realities of the employment relationship make it clear that plaintiff was not an employee of the Forest City defendants. In its response to plaintiff's EEOC complaint against it, Securitas indicated that its security guards are employed solely by Securitas and not by the client, and that Securitas is solely responsible for supervising, assigning, and terminating its security guards. *See* Pl.'s Br., Ex. 27, at 2, 5. In his deposition, plaintiff admitted that he was hired by Securitas, never worked for Forest City, and received all of his wages from Securitas, and that Forest City did not have authority to fire him. *See* Forest City Def.s' Br., Ex. B, at 106-08, 156. Thus, there is no genuine issue of fact precluding the conclusion, as a matter of law, that the Forest City

defendants lacked the power to control either plaintiff's job performance or employment opportunities.

This case is thus nearly identical to *Rodriguez v. Lauren*, 77 F. Supp. 2d 643 (E.D. Pa. 1999). In that case, the plaintiff was a security guard employed by Advance Security. Like Securitas, Advance contracted with third parties to provide security services. The plaintiff was assigned to work as a guard at a store operated by the defendant. The court concluded that the plaintiff was not an employee of the defendant, explaining that he was hired, paid, and provided benefits by Advance, the defendant had no authority to assign the plaintiff to additional projects, and the defendant was not a security service seller. *See id.* at 647-48. The court concluded, in language directly applicable here: "Simply put, Rodriguez was an employee of Advance Security, not of Polo, and his work for Advance Security at Polo's store was performed pursuant to Advance Security's contract with Polo for the provision of security services." *Id.* at 648. For the same reasons, plaintiff in this case was an employee of Securitas, and not the Forest City defendants. He therefore cannot maintain a Title VII action against the Forest City defendants. *See also*, *Kerr v. WGN Continental Broadcasting Co.*, No. 01 C 7196, 2002 WL 1477629, at *7 (July 9, 2002) (employee of company which contracted with defendant broadcasting company to produce broadcasts of sporting events was not an employee of the broadcasting company under Title VII, where plaintiff was not paid, assigned work projects, or provided any equipment by defendant broadcasting company), *mot. to amend judgment denied*, 299 F. Supp. 2d 880 (N.D. Ill. 2002).

It is true that some courts have recognized Title VII liability where the defendant can be considered an "indirect employer" of the plaintiff. The Sixth Circuit does not appear to have either approved or disapproved of the indirect employer theory of liability. Even assuming that such a

theory is viable in this Circuit, however, it is inapplicable here.   Indirect employer liability is available only if "the defendant so far controlled the plaintiff's employment relationship that it [is] appropriate to regard the defendant as the de facto or indirect employer of the plaintiff[.]" *Equal Employment Opportunity Comm'n v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995); *see also*, *Conroy v. City of Philadelphia*, 421 F. Supp. 2d 879, 888 (E.D. Pa. 2006).   Here, as plaintiff conceded, Forest City had no control over plaintiff's employment relationship with Securitas.   Securitas alone was responsible for plaintiff's assignments, pay, and continued employment.   In these circumstances, the Forest City defendants cannot be held liable under Title VII on an indirect employer theory.   *See Kerr*, 2002 WL 1477629, at *7-*8, *adhered to*, 229 F. Supp. 2d at 886; *Rodriguez*, 77 F. Supp. 2d at 646 n.7.[1]

In short, there is no genuine issue of material fact with respect to whether plaintiff was an employee of the Forest City defendants.   Accordingly, the Court should grant the Forest City defendants' motion for summary judgment.

D.   *Defendant Securitas*

1.   *Discrimination*

a. *Legal Standard*

The Sixth Circuit has explained the legal standard governing discrimination claims under

---

[1]It is true that Forest City had some control over plaintiff's employment pursuant to its contract with Securitas.   This control, however, was limited to the ability to prevent plaintiff from working at a Forest City site.   The indirect employer cases make clear that this minimal type of control, without any control over the actual employment relationship such as hiring, firing, or pay, is insufficient to render a defendant the de facto employer of a plaintiff.   *See Abbott v. Village of Westmont, Ill.*, No. 02 C 2296, 2003 WL 22071492, at *7 (N.D. Ill. Sept. 5, 2003); *cf. Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994-95 (6th Cir. 1997) (applying similar test under the related single employer theory of liability).

Title VII:

In Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In evaluating a claim of employment discrimination, we employ the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Vaughn v. Watkins Motor Lines, Inc.,* 291 F.3d 900, 906 (6th Cir.2002); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253, 101 S.Ct. 1089 (quoting *McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.; see also Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir.1995).

*DiCarlo v. Potter*, 358 F.3d 408, 414-15 (6th Cir. 2004).

In order to establish a prima facie case of discrimination, plaintiff must show that "(1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) he was treated differently from similarly situated individuals outside of his protected class."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *DiCarlo*, 358 F.3d at 415.  If plaintiff establishes these four elements, the burden shifts to defendant to offer a nondiscriminatory reason for its actions.  If it fails to do so, summary judgment for defendant will not be appropriate.  However, this burden is one of production, and the ultimate burden of persuasion remains on the plaintiff.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

507 (1993).  Thus, while a defendant's failure to offer a nondiscriminatory reason to rebut a plaintiff's *prima facie* case will allow the case to go to the jury, and allow the jury to find for the plaintiff, such a failure does not entitle the plaintiff to summary judgment.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) ("[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff.).

If defendant does articulate a valid nondiscriminatory reason for its actions, the burden shifts to plaintiff to show that the defendant's proffered reason is pretextual.  Plaintiff can establish pretext by showing "1) that the proffered reasons had no basis in fact, 2) that the proffered reasons did not actually motivate the action, or 3) that the proffered reasons were insufficient to motivate the action."  *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002).  At this stage, the plaintiff must show that the proffered reason is a pretext for prohibited discrimination.  "A reason is legitimate for purposes of the civil rights laws if it is nondiscriminatory, even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable."  *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 280 (6th Cir. 1991).  Further, if the employer had an honest belief in its nondiscriminatory reason for the action, the reason is legitimate even it is later shown to be incorrect.  *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).  At all times throughout this framework, the ultimate burden of persuasion remains with the plaintiff.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

### b.  Analysis

There is no dispute that plaintiff is a member of a protected class, and thus satisfies the first element of his *prima facie* case.  Defendant Securitas argues, however, that plaintiff has failed to satisfy the remaining elements of his *prima facie* case, and that even if he has done so any actions

11

it took were based on legitimate, nondiscriminatory reasons.  The Court should conclude that each of plaintiff's allegations of discrimination either fails to establish one or more elements of the *prima facie* case, or that defendant has offered a legitimate, nondiscriminatory reason for its actions which plaintiff has failed to rebut.

Fairly read, plaintiff's complaint alleges the following instances of actions taken by defendant Securitas which plaintiff contends were taken for discriminatory reasons: (1) his removal from the Forest City account; (2) his failure to be promoted to the road supervisor/inspector position; (3) being subjected to higher scrutiny and "nit picking" than were white officers; and (4) his demotion from flex officer to security guard.  The Court should conclude that each of these claims fails as a matter of law, for the reasons explained below.

(i)      Removal from Forest City Account:      With respect to his removal from the Forest City account, plaintiff cannot establish the second element of his *prima facie* case–that he suffered an adverse employment action.  An adverse employment action is an action that results in a "materially adverse change in the terms and conditions of [plaintiff's] employment."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999); *see also*, *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004); *Kocsis v. Multi-Care Management Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).  As the Supreme Court has explained, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).  "A tangible employment action in most cases inflicts direct economic harm."  *Id*. at 762.  Thus, "[a] mere 'inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action."  *White v. Burlington*

12

*N. & S.F. Ry. Co.*, 364 F. 3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis*, 97 F.3d at 886).

Defendants argue, and plaintiff does not dispute, that he continued to be paid at the same rate–$10.00 per hour–both before and immediately after his removal from the Forest City account. Nor does plaintiff allege any other material change in his job responsibilities as a result of his removal from the Forest City account. In these circumstances plaintiff has failed to raise a genuine issue of fact on the second element of his *prima facie* case. *See Newell v. Celadon Sec. Servs., Inc.*, 417 F. Supp. 2d 85, 98 (D. Mass. 2006) (removal of security guard from one site and transfer to different site did not constitute adverse employment action); *Amiri v. Stoladi Property Group*, 407 F. Supp. 2d 119, 125-26 (D.D.C. 2005) (same); *see also*, *Momah v. Dominguez*, ___ Fed. Appx. ___, ___, 2006 WL 678963, at *9 (6th Cir. Mar. 15, 2006); *Kocsis*, 97 F.3d at 886-87.[2]

Further, even if plaintiff were able to establish a *prima facie* case of discrimination with respect to his removal from the Forest City account, Securitas has offered a nondiscriminatory reason for its action. In support of its motion, Securitas offers the affidavit of Cassandra Dixon, who avers that the contract between Securitas and Forest City granted Forest City the right to approve the officers assigned to its properties and to demand their removal from its properties. *See* Def. Securitas's Br., Ex. A, Aff. of Cassandra Dixon, ¶ 4. Plaintiff was removed from the Forest City account pursuant to this contractual provision. As far as Securitas knew, the request from Forest City was based on plaintiff's leaving his training session early, questioning the competence of Forest City's management, and involving himself in affairs that did not concern him. *See id.*, ¶ 5. Plaintiff

---

[2]Because plaintiff has failed to establish a genuine issue of fact with respect to this element of his prima facie case, the Court need not consider the other elements. *See Paris v. Christiana Care Visiting Nurses Ass'n*, 197 F. Supp. 2d 111, 116 (D. Del. 2002); *Seely v. Runyon*, 966 F. Supp. 1060, 1064 n.7 (D. Utah 1997).

has presented no evidence that Securitas itself knew of the Forest City defendants' allegedly discriminatory animus. In these circumstances, Securitas's removal of plaintiff from the account at Forest City's request, pursuant to Securitas's contractual obligations, was based on a legitimate nondiscriminatory reason. *See Holleran v. Omniflight Helicopters, Inc.*, No. 1:05-CV-36, 2006 WL 752569, at *12 (N.D. Ind. Mar. 22, 2006); *Quillens v. International Business Machines Corp.*, No. H-79-1280, 1981 WL 305, at *4 (S.D. Tex. Dec. 29, 1981). Plaintiff offers nothing to show that this reason was pretextual, except to argue with the underlying merits of Forest City's complaints about his performance. However, even if plaintiff's interpretation of events is true, it is insufficient to establish pretext because he offers no evidence that Securitas did not believe Forest City's complaints to be true. The correctness of Securitas's belief is immaterial in the pretext inquiry, so long as its belief was honest and in good faith. *See Majewski*, 274 F.3d at 1117.

Thus, plaintiff has failed to establish a *prima facie* case of discrimination based on his removal from the Forest City account because he cannot show that his transfer amounted to a materially adverse employment action. Further, even if he could make this showing, plaintiff has failed to offer any evidence to rebut the nondiscriminatory reason for plaintiff's transfer proffered by Securitas. Defendant Securitas is accordingly entitled to summary judgment with respect to this claim of discrimination.

(ii)    Failure to Promote: Plaintiff next argues that he was discriminated against by Securitas's failure to promote him to the position of road supervisor or inspector. The parties dispute whether this position paid $11.00 per hour as alleged by plaintiff, but the Court may assume that this failure to promote would constitute an adverse employment action under the second element of the *prima facie* case regardless, because this claim fails for other reasons.

14

Securitas asserts that plaintiff was never promoted to the road supervisor or inspector position because, for budgetary reasons, the position was never filled. *See* Pl.'s Br., Ex. 16. Plaintiff disputes this assertion, contending that the position were merely renamed "scheduler," and was subsequently filled by another security guard named Willy Hale. *See* Pl.'s Br., at 9. Even assuming that this is true, however, plaintiff has failed to establish a *prima facie* case of discrimination.

In the failure to promote context, the *prima facie* case requires plaintiff to show that "(1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who are not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000); *see also*, *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). Here, plaintiff cannot show that he was qualified for the position, because the position was a position on the Forest City account, and plaintiff had been removed from that account for a legitimate business reason. Further, he has failed to show that another employee of similar qualification received the scheduler position at or around the time that he was denied the position. Plaintiff makes no allegation, nor offers any evidence, relating to Mr. Hale's race, and thus he has not established that a person outside of his protected class was given the promotion. Further, plaintiff makes no allegation as to precisely when Mr. Hale supposedly received this promotion, and thus he has not established that Mr. Hale's promotion was made at the time his promotion was denied. Plaintiff has thus failed to establish a *prima facie* case with respect to his failure to promote claim.

In his response brief, petitioner also contends that a less-qualified white security guard,

15

Frank Cooper, was approved to take Derek Humphrey's account manager position.[3]  However, petitioner does not argue that he himself ever applied for this position, and thus he cannot establish a *prima facie* case of discrimination with respect to this position.  *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999).  Further, plaintiff has offered no evidence regarding his and Mr. Cooper's respective qualifications.  Because the fourth prong requires plaintiff to show that employees with similar qualifications received promotions while he did not, plaintiff is required to present some evidence regarding the qualifications of those employees.  *See White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232, 243 (6th Cir. 2005); *Mehr v. Starwood Hotels & Resorts Worldwide, Inc.*, 72 Fed. Appx. 276, 282-83 (6th Cir. 2003).

(iii)    Level of Scrutiny: Plaintiff also contends that his work was subjected to a greater level of scrutiny than that of similarly situated employees outside of his protected class.  Even if plaintiff has presented sufficient evidence to show that this is true, the claim nevertheless fails as a matter of law on the adverse action prong of the *prima facie* case.  It is well established, as a matter of law, that increased scrutiny of a plaintiff's work does not constitute an adverse employment action.  *See Birch v. Cuyahoga County Probate Ct.*, 392 F.3d 151, 169 (6th Cir. 2004); *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999).

(iv)    Demotion to Security Guard:  Finally, plaintiff contends that he was discriminated against by his demotion from flex officer to security guard.  Here, plaintiff's claim fails on several bases.  First, plaintiff has identified no similarly situated employees outside of his protected class who were treated differently than him.  Although plaintiff points to Frank Cooper, plaintiff admitted

---

[3]In its answers to plaintiff's interrogatories, Securitas responded that Mr. Cooper never assumed the account manager position because he did not complete the required training.  *See* Pl.'s Br., Ex. 10, Response to Interrogatory No. 13.

in his deposition that he had no knowledge of Mr. Cooper apart from the fact that Cooper worked on the Forest City account after plaintiff had already been removed.  Further, Cooper worked at a different location than plaintiff.  *See* Forest City Def.s' Br., Ex. B, at 119, 124.  Thus, plaintiff cannot establish a *prima facie* case of discrimination.

Further, Cassandra Dixon avers that plaintiff was reassigned to a permanent position because plaintiff challenged her assignments and direction.  *See* Def. Securitas's Br., Ex. A, ¶ 8.  "[I]nsubordination constitutes a legitimate, nondiscriminatory reason" for an adverse employment action.  *Hibbler v. Regional Med. Ctr. at Memphis*, 12 Fed. Appx. 336, 340 (6th Cir. 2001); *see also*, *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  Again, plaintiff has offered no reason to question Dixon's motivations, nor has he offered any evidence to suggest that Dixon's explanation is a pretext for impermissible discrimination.  Accordingly, the Court should conclude that defendant Securitas is entitled to summary judgment with respect to this claim of discrimination.

2.   *Retaliation*

a.  *Legal Standard*

Retaliation claims under Title VII are governed by the same burden shifting framework which govern discrimination claims.  *See Balmer v. HCA, Inc.* , 423 F.3d 606, 613-14 (6th Cir. 2005); *Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004).  "To establish a prima facie case of retaliation, a plaintiff must show: (1) that []he engaged in protective activity; (2) that defendant knew of this exercise of [his] protective activity; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protective activity and adverse employment action."  *Balmer*, 423 F.3d at 614.

17

*b. Analysis*

Plaintiff contends that defendant Securitas retaliated against him for his filing of complaints with the EEOC.  Relevant to this lawsuit, plaintiff filed three complaints with the EEOC.  First, on June 15, 2004, plaintiff filed a charge against Forest City alleging discrimination.  *See* Def. Securitas's Br., Ex. B.  Second, on July 20, 2004, he filed another charge against Forest City, alleging that he was discharged from the company in retaliation for his first EEOC complaint and due to racial discrimination.  *See id.*, Ex. C.  Finally, on September 13, 2004, plaintiff filed a charge against Securitas, claiming that he was subject to disparate treatment due to his race and his filing of the two previous EEOC complaints.  *See id.*, Ex. D.

Plaintiff's first two EEOC complaints afford no basis for relief on a retaliation claim.  As is clear from the complaints themselves, these charges were directed solely at Forest City.  There is no evidence that Securitas had any knowledge of these two complaints, which were filed against a completely separate entity.  As noted above, the second element of plaintiff's *prima facie* case requires a showing that defendant Securitas knew about his protected activity.  Thus, "plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."  *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).  Here, plaintiff has presented no evidence from which it can be inferred that defendant Securitas had any knowledge of his two EEOC charges against Forest City.  His retaliation claim thus fails to the extent it is based on these two charges.  *See Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005); *Cartwright v. Lockheed Martin Utility Servs., Inc.*, 40 Fed. Appx. 147, 155 (6th Cir. 2002).

With respect to the September 13, 2004, EEOC complaint against Securitas, plaintiff cannot

18

establish the fourth prong of his retaliation case–that is, a causal connection between the protected activity and the alleged adverse employment actions. Plaintiff's reassignment, failure to promote, and increased scrutiny claims all arise from actions taken by Securitas prior to the filing of his EEOC charge. Because these events preceded his protected activity, there is no causal connection between the protected activity and Securitas's actions. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (employment action which was planned by employer prior to the protected conduct was not causally related to protected conduct); *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 694 (N.D. Ohio 2006) (no causal relationship between police officer's assignment to gym duty and his protected activity where his assignment to gym duty predated his protected conduct).

With respect to plaintiff's demotion claim, plaintiff has offered nothing to show that Securitas's employment decision was causally related to the filing of the EEOC charge, other than that one followed the other. There appears to be some question in the Sixth Circuit as to whether temporal proximity between protected activity and an adverse employment decision alone can satisfy the causal connection prong of the *prima facie* case. *Compare Balmer*, 423 F.3d at 615 (internal quotation omitted) ("[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim.") *and Walcott v. City of Cleveland*, 123 Fed. Appx. 171, 178 (6th Cir. 2005) (citing *Hafford v. Seidner*, 183 F.3d 506, 516 (6th Cir. 1999)) ("Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection."), *with Singfield*, 389 F.3d at 563 (finding *prima facie* case established by temporal proximity of protected conduct and adverse employment action). However, even assuming that temporal proximity alone can suffice in some

19

cases, this is not such a case because plaintiff's demotion is too remote in time from the EEOC charge to support an inference of discrimination. As the Supreme Court explained in *Clark County*, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly held that the temporal proximity must be 'very close.'" *Clark County*, 532 U.S. at 273 (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In support of this proposition, the Court cited cases holding that lapses of even three months between the protected activity and the adverse employment action are too long to support an inference of discrimination. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient)). As the Sixth Circuit has observed, "cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Nguyen*, 229 F.3d at 566-67 (internal quotation omitted); *see also*, *Lentz*, 410 F. Supp. 2d at 691. Here, plaintiff's demotion occurred over six months after he filed his EEOC charge against Securitas. In the absence of any other evidence of retaliatory motive, this interval is too long to support an inference that his demotion was causally related to his protected activity. *See Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1121 (10th Cir. 2005); *Feltmann v. Sieben*, 108 F.3d 970, 976-77 (8th Cir. 1997); *Noble v. Sheahan*, 132 F. Supp. 2d 626, 642 (N.D. Ill. 2001); *Cruse v. G & J USA Pub.*, 96 F. Supp. 2d 320, 327 (S.D.N.Y. 2000). Accordingly, the Court should conclude that defendant Securitas is entitled to summary judgment on plaintiff's retaliation claim.[4]

---

[4]As with his discrimination claims, plaintiff's failure to establish a genuine issue of material fact with respect to one element of his *prima facie* case makes it unnecessary to consider the other elements. *See* note 1, *supra*. I note, however, that plaintiff's retaliation claims also fail

E.   *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact with respect to whether the Forest City defendants were plaintiff's employer as defined by Title VII.  Because Title VII liability is limited to employers, the Court should grant the Forest City defendants' motion for summary judgment.  The Court should also conclude that plaintiff has failed to raise a genuine issue of material fact with respect to his discrimination and retaliation claims against defendant Securitas under the burden shifting framework applicable to Title VII claims. Accordingly, the Court should grant defendant Securitas's motion for summary judgment.

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2),

---

for the same reasons that his discrimination claims fail.  Thus, in addition to the reasons discussed here, plaintiff's retaliation claims relating to his transfer and the increased scrutiny of his work fail to set forth a *prima facie* case because these do not constitute adverse employment actions; his demotion and failure to promote claims fail because, even if plaintiff can establish a *prima facie* case of retaliation, Securitas has offered legitimate nondiscriminatory reasons for these actions which plaintiff has failed to rebut by presenting evidence of pretext.

21

a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: June 19, 2006

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 19, 2006.

s/Eddrey Butts
Case Manager

22